## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ADMIRAL INSURANCE COMPANY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-1108 |
| | § | |
| OLSHAN FOUNDATION REPAIR CO., *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

### MEMORANDUM OPINION AND ORDER

Now before the court is defendant and counter-plaintiff Olshan Foundation Repair Co.'s ("Olshan") motion for summary judgment. Dkt. 23.  After considering the motion, response, reply, and applicable law, the court is of the opinion that the motion should be DENIED.

### I. BACKGROUND

This is an insurance dispute in which plaintiff and counter-defendant Admiral Insurance Company ("Admiral") seeks a declaration that it is not required to indemnify Olshan for the entirety of damages assessed against Olshan in an arbitration award.  Olshan seeks a declaration stating the opposite.  The damages awarded by the arbitrator stem from a series of events beginning in late 2000.  Dkt. 1 at 2.  From January 1, 2000 through March 1, 2003, Olshan was insured under three commercial general liability policies issued by Admiral.  *Id.*  In June 2007, Mary Kay Dauria filed a lawsuit against Olshan alleging several causes of action stemming from work Olshan did to repair her foundation in 2000.  The parties agreed to arbitrate Dauria's claims, and the arbitrator issued an award in Dauria's favor.  The arbitrator's award included extensive findings of fact and conclusions of law, which have been submitted to the court by both parties.  Dkt. 23-1; Dkt. 27-5.

The following summary of relevant facts is taken from the arbitrator's findings of fact.  *Id.* In September 2000, Dauria employed Olshan to repair her foundation.  *Id.* ¶ 8.  During the repair, Olshan identified a leak in Dauria's pluming, which it repaired.  *Id.*  Olshan also replaced plumbing lines serving an upstairs bathroom and represented that the work was complete.  *Id* ¶ 9.  In September 2001, Dauria noticed discoloration of her downstairs parquet floor, and in November 2001, she noticed that her floor and sheetrock were wet.  *Id.* ¶¶ 11-12.  Dauria called Olshan to report the problem, and Olshan sent Rich LaPar to investigate the water damage.  Upon inspection, LaPar determined that the tunnels used by Olshan to complete the foundation repair were filled with water, so Olshan refilled the tunnels in question.  *Id.*

Olshan paid Dauria $3070.00 towards her flooring repairs, and told her that they would pay more once the repairs were actually done.  *Id.* ¶ 15.  During October 2002, the floors began to buckle again, water seeped through the cracks, and mildew began growing in the home.  *Id.* ¶ 16.  Olshan dug a tunnel to pump water, but the problem worsened.  *Id.*  Dauria consulted with several plumbers, and one of them found a problem with the upstairs plumbing that Olshan had previously repaired. *Id.* ¶ 17.  The arbitrator found that Olshan failed to re-plumb the upstairs bathroom into the main sewer line.  *Id.*  Olshan made the plumbing repairs in January 2003 and told Dauria to wait six to twelve months before having additional repairs evaluated.  *Id.* ¶ 20.

Dauria waited until March 2004, and contacted Olshan about assessing and paying for the damages to her home.  Olshan hired an engineering firm to inspect the residence and provide a report on necessary repairs.  *Id.* ¶ 21.  Between July 2004 and January 2005, Olshan conducted several more foundation repairs.  However, Olshan did not repair any of the other damaged parts of Dauria's home.  In August 2006, Dauria hired her own engineer to investigate the damages.  *Id.* ¶ 30.  During 2005 and 2006, Olshan had not been responsive to Dauria's requests for repairs.  *Id.* ¶ 26.  In

October 2006, Dauria met with Olshan's general manager, Nick Meador, who agreed to come to her home. *Id.* ¶ 28. When Meador came to Dauria's home with LaPar, LaPar asked Dauria why Olshan should be required to pay for her damaged home and indicated that Olshan would never agree to pay for the damages Dauria was asserting. *Id.* ¶ 29. The arbitrator found that this was in direct contradiction to Olshan's previous promises that it would address the problems with Dauria's home. *Id.* ¶ 30.

The arbitrator found Olshan responsible for nearly $900,000.00 in damages and attorneys' fees and determined that Olshan committed acts of fraud, negligent misrepresentation, negligence, and breach of contract. *Id.* ¶ 49. The arbitrator found that Olshan's acts of fraud, negligent misrepresentation, negligence, and breach of contract were all proximate causes of Dauria's damages, which included the cost to tear down and rebuild her home, destruction of personal property, moving expenses, temporary house expenses, costs, and attorneys' fees. *Id.* ¶¶ 62-69.

Olshan seeks summary judgment on Admiral's claim for declaratory judgment as well as its own counterclaim for declaratory judgment.

## II. LEGAL STANDARD

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S. Ct. 2505 (1986). An issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up*

3

*Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322.  If the moving party fails to meet this burden, it is not entitled to a summary judgment, and no defense to the motion is required. *Id* .  "For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell* , 66 F.3d 715, 718–19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323–25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting Fed. R. Civ. P. 56(e)).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).  The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the non-moving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch.*

4

*Dist.*, 233 F.3d 871, 874 (5th Cir. 2000).  However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation."  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts."  *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

## III. ANALYSIS

Olshan seeks summary judgment on its indemnity claim against Admiral.  "[An] insurer's duty to indemnify is determined based on the facts actually established in the underlying suit." *Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 334 S.W.3d 217, 219 (Tex. 2011).  Olshan contends that the facts found by the arbitrator require coverage given the language of the policy.  Under the policies, Admiral "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  Dkts. 24-3 at 8; 24-4 at 7; 24-5 at 7.  The policies limit coverage to instances where "the 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and . . . [t]he 'bodily injury' or 'property damage' occurs during the policy period."  *Id.*  Under the policies, "property damage" is defined as "physical injury to tangible property, including all resulting loss of use of that property."  Dkts. 24-3 at 19; 24-4 at 18; 24-5 at 18.  "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially general harmful conditions."  *Id.*  Olshan argues that the damage to Dauria's home qualifies as covered property damage, and the failure to properly repair the sewer lines in 2000 was a covered "occurrence."  Here, the initial failure to reconnect the sewer line occurred in 2000, during

the policy period. Although the damage to Dauria's home continued to worsen for several years, Olshan contends that the damage was during the policy period because the initial damage occurred during a period of coverage.

Admiral opposes Olshan's motion for summary judgment on several grounds. Resolution of Olshan's motion requires two separate inquires. First, has Admiral presented evidence that Olshan's damages were due in whole or in part to a non-covered peril? Second, if a non-covered peril was a proximate cause of Olshan's damages, is Admiral still required to indemnify Olshan? As fully analyzed below, the court finds that Admiral has presented evidence sufficient to defeat summary judgment showing that Olshan's damages were caused, in part, by a non-covered event and that Admiral is not required to indemnify Olshan for the portion of its damages caused by non-covered acts.

### A. Covered or Non-Covered Event

Admiral's Original Complaint alleges that several policy exclusions preclude indemnity in this case. However, because the court finds that Admiral has presented sufficient evidence that the policy does not cover Olshan's acts of fraud, consideration of each and every one of Admiral's alleged exclusions is unnecessary to resolve Olshan's motion for summary judgment. Very plainly, the policy only provides coverage for an "occurrence," and "occurrence" is defined as "an accident." Fraud is not an accident, and damages stemming from an act of fraud are not covered by the policy.

### B. Independent or Concurrent Causation

The court must next determine whether Admiral is required to indemnify in spite of the arbitrator's finding of fraud. The arbitrator found that Olshan's fraud, negligence, negligent misrepresentation, and breach of contract each proximately caused Dauria's damages. Assuming *arguendo* that the initial failure to connect the upstairs plumbing is a covered occurrence, Admiral

6

argues that the damages to Dauria's home were concurrently caused by covered and non-covered acts and that Olshan is responsible for segregating the damages arising from each. Olshan argues that the covered and non-covered events independently caused Dauria's damages and that Admiral is required to indemnify Olshan regardless of the arbitrator's finding of fraud.

Texas law distinguishes between cases involving "separate and independent" causation and those involving "concurrent" causation when both covered and non-covered events cause an injury. *Utica Nat. Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 204 (Tex. 2004). "In cases involving separate and independent causation, the covered and the excluded event each independently cause the [insured's] injury, and the insurer must provide coverage despite the exclusion." *Id.* (citing *Guaranty Nat'l Ins. Co. v. N. River Ins. Co.*, 909 F.2d 133, 137 (5th Cir. 1990)). "In cases involving concurrent causation, the excluded and covered events combine to cause the [insured's] injuries. Because the causes cannot be separated, the exclusion is triggered." *Id.* (citing *Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 771-72 (5th Cir. 1999)).

Olshan argues that the fraud and failure to reconnect the plumbing were independent causes, either one of which would have caused Dauria's injury. Dkt. 24 at 17. In support of this argument, Olshan relies on the *North River* case. In *North River*, a hospital patient committed suicide by jumping out a window. *N. River*, 909 F.2d at 137. The court found that the suicide was "proximately caused by both the hospital's failure to supervise the patient, a non-covered act, and the hospital's failure to secure its windows, a covered act." *Id.* Because the two causes were "separate and independent," the court held that the insurer must provide coverage despite the exclusion. *Id.* Olshan relies on the arbitrator's characterization of both its fraud and negligence as proximate causes of Dauria's injury to make an analogy to the facts of *North River*.

The court finds *North River* inapplicable to the facts of this case.  In *North River*, a jury found that the hospital failed to properly maintain its windows—a covered act.  909 F.2d at 134.  The jury also found that the hospital failed to properly monitor the patient who committed suicide—a non-covered act.  *Id*.  The court found that the hospital's failures were independent causes and that either one of the acts, without the other, could have caused the loss.  *Id.*  Olshan's argument does not differentiate between independent acts and independent causes.  Olshan's failure to connect the plumbing, and its fraud are clearly independent acts.  However, that does not mean that they are independent causes.  Olshan's failure to connect the plumbing would not have caused near the quantum of damages awarded to Dauria if it had not been followed by Olshan's fraud, perpetrated over a number of years while Dauria's home continued to suffer additional damage.

While Olshan's covered and non-covered acts are independent acts, the causation is concurrent.  Under the doctrine of concurrent causation, "when covered and non-covered perils combine to create a loss, the insured is entitled to recover that portion of the damage caused solely by the covered peril."  *Allison v. Fire Ins. Exchange*, 98 S.W.3d 227, 259 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.).  Here, Olshan's failure to connect the plumbing line combined with Olshan's fraud and breach of contract to cause the entirety of Dauria's damages.  Therefore, Olshan may only recover the amount of damage caused solely by its covered acts.  *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 302-03 (Tex. App.—San Antonio 1999, pet. denied).  The burden is on Olshan to prove coverage.  *Id.*  Olshan must therefore present some evidence upon which the jury can allocate the damages attributable to the covered peril.  *Id.*  Allocation is central to Olshan's claim for coverage, and its failure to carry the burden of proof on allocation is fatal to the claim.  *Id.*  Olshan must "attempt to segregate the loss caused by the covered peril from the loss covered by the

excluded peril." *Allison*, 98 S.W. 3d at 259 (ciring *Wallis*, 2 S.W.3d at 302-303).  Olshan's motion does not attempt to segregate the damages caused by covered and non-covered acts.  Accordingly, the motion must be denied.

### IV. CONCLUSION

Because Olshan has not shown that it is entitled to judgment as a matter of law, its motion for summary judgment (Dkt. 23) is DENIED.

It is so ORDERED.

Signed at Houston, Texas on April 21, 2015.

_____
Gray H. Miller
United States District Judge